## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SHERRI R. LOWE, | § | |
| SHIRLEY LOWE-GRIFFITH, | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | 3:14-CV-1460-M-BK |
| | § | |
| UHF MAGNOLIA TRACE LP, et al., | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Plaintiffs Sherri R. Lowe ("Lowe")

and Shirley Lowe-Griffith's ("Griffith's") *pro se* complaint was automatically referred to the

United States Magistrate Judge.  The Court granted the motion to proceed *in forma pauperis*, but

did not issue process pending preliminary screening.  For the reasons that follow, this case

should be summarily dismissed unless Plaintiffs file an amended complaint stating a viable

claim.

### I. BACKGROUND

This case stems from events involving Plaintiffs' tenancy at Magnolia Trace Apartments

(the "Complex"), owned by Defendant UHF Magnolia Trace L.P. ("UHF Magnolia") and

operated by Defendant SunChase American ("SunChase").  [Doc. 18 at 3].  Defendant Bridgett

Rainey, a SunChase employee, managed the Complex during the events in question.  [Doc. 18 at

3].  Griffith, is an elderly, disabled, African-American woman, and Lowe is her daughter and

live-in aide.  [Doc. 18 at 3, 20].  Although a stroke left Griffith paralyzed and unable to speak,

Lowe states that Griffith is able to understand and write her name.  [Doc. 11 at 1].  Because of

her disabilities, Plaintiffs maintain Griffith receives federal housing assistance under a Dallas

Housing Authority program [Doc. 23 at 3, no. 7], and Lowe has been approved as her live-in aide.  [Doc. 11 at 1-2; Doc. 18 at 3].[1]

In April 2013, following approval of their rental application with live-in aide documentation and the signing of a lease agreement, Plaintiffs assert Rainey began harassing them by refusing to provide a copy of the lease agreement, denying Lowe a remote-access key for the entry gates to move in, presenting Griffith with incorrect copies of the lease agreement to sign (reflecting either no deposit or only a partial deposit), and refusing Lowe a parking permit and a handicap parking space.  [Doc. 11 at 1-2; Doc. 18 at 3].  Plaintiffs maintain that Rainey refused to issue the parking permit and remote-access key to Lowe because Griffith did not own Lowe's truck.  [Doc. 11 at 2; Doc. 18 at 3].  Plaintiffs further state that Rainey also declined to add Lowe as an occupant to the lease agreement.  [Doc. 11 at 2].  Ultimately, after Lowe met with supervisor Brad Hedrick, Plaintiffs claim they received one remote-access key, but not a parking permit.  [Doc. 11 at 2; Doc. 23 at 3and 13; nos. 11-16 and HUD application].  Lowe concedes that while she was denied a remote-access key of her own, she was given a code for one of the walk-in gates, but was required to park in the visitor parking area with a visitor parking permit.  [Doc. 23 at 3 and 13; nos. 11-16 and HUD application].

After the meeting with Hedrick, Plaintiffs aver they "were subjected to more harassment:"   (1) other tenants began to block the sidewalks as Plaintiffs entered or existed their apartment; (2) Rainey informed Lowe, while Lowe was playing dominoes with other tenants,

---

[1]  Lowe initially brought this action on her behalf and as next friend of Griffith.  [Doc. 3 at 1].  Because Griffith and Lowe both signed the amended complaint and answers to the supplemental questionnaire, it appears they both seek to proceed with this action.  [Doc. 6 at 1; Doc. 11 at 7; Doc. 23 at 10].   Thus, the Court need not address whether Lowe, a *pro se* litigant, can represent Griffith as next friend.  [Doc. 12 at 1].

  Plaintiffs have declined to answer question 8 of the supplement questionnaire, which required them to confirm whether Griffith receives a Section 8 housing voucher.  [Doc. 23 at 3].

that she could not be in the club house; (3) Lowe was denied access to the movie theater, fitness room, and other amenities available in the Complex; and (4) Rainey applied money left on their account to rent due without Plaintiffs' permission.  [Doc. 11 at 2].  As a result of these events, Plaintiffs assert "they were treated differently," and that other non-resident Hispanics, such as Rainey's family members, had access to all amenities in the Complex without being accompanied by a lease holder.  [Doc. 11 at 2].

On July 5, 2013, Plaintiffs contend Lowe observed a teenager watching television in the clubhouse and using the fitness room without a lease holder.  [Doc. 11 at 2].  Although Lowe immediately reported the incident, the office assistant refused to sign or initial Lowe's complaint.  [Doc. 11 at 2; Doc. 18 at 3].  Plaintiffs maintain that on July 9, 2013, they began receiving "phone calls with people just breathing on the phone and hanging up."  [Doc. 11 at 2; Doc. 18 at 3].  The next day, Plaintiffs affirm Rainey placed on their apartment door "a revised Live-In Aide Addendum" (specifying Lowe had "no rights as an occupant") and a letter informing Griffith that refusal to sign the revised Addendum would result in the termination of the lease.  [Doc. 11 at 2].  Plaintiffs aver they did not sign the revised Addendum and, shortly after, Rainey advised them they could not have family members or friends visiting, and issued "a notice of lease violation for too much traffic."  [Doc. 11 at 2; Doc. 18 at 3].  Plaintiffs' claim, however, that on July 18, 2013, Rainey's mother was permitted to hold a card game in the club house with several people in attendance.  [Doc. 11 at 2; Doc. 18 at 3].

In addition to the alleged harassment outlined above, Plaintiffs assert that Lowe was followed on numerous occasions (on at least a couple of them by Rainey herself and one of her family members), and that management and maintenance personnel at the Complex entered their apartment without consent "and went through [their] belongings."  [Doc. 11 at 2-3; Doc. 18 at 3].

Furthermore, on August 21, 2013, Plaintiffs state that the security officer at the Complex approached them outside of their apartment and told them, with his hand on his gun, "I am watching you.  Did you hear me? I said, I am watching you." [Doc. 11 at 3; Doc. 18 at 4] Plaintiffs aver Griffith was so scarred by the incident that she was unable to sleep and ultimately became ill.  [Doc. 11 at 3; Doc. 18 at 4].  Plaintiffs also maintain that, during the next few months, Lowe continued to be followed, unidentified individuals persistently entered their apartment and called their home phone number and hung up, someone called Adult Protective Services on them, and tenants in the Complex blocked the walkway when Plaintiffs returned home in the evenings.  [Doc. 18 at 4].

Plaintiffs aver that in December 2013, they filed a housing discrimination complaint with the United States Department of Housing and Urban Development (HUD) alleging discrimination by Rainey.  [Doc. 11 at 3].  The HUD complaint included generally the same allegations as in this case -- that Rainey (1) refused to add Lowe to the lease, (2) denied a parking sticker for Lowe's vehicle, and (3) limited access to the property to one entry gate with use of the remote.  [Doc. 23 at 13, copy of HUD complaint].  It also noted that, while Lowe was given a code for one walk-in gate, she was "denied an access key to the weight room, theatre and other amenities" on the property, and that if Lowe wanted to use the amenities, Griffith had to accompany her.  [Doc. 23 at 13, copy of HUD complaint].  The HUD complaint further stated that Griffith only had access to one walk-in gate, which was not the closest to her unit, and had unsuccessfully requested access to all four walk-in gates; and that in July 2013, Rainey required Lowe to sign a new Live-In Aid Addendum, which stated she "ha[d] no rights as an occupant." [Doc. 23 at 13-14].  The HUD complaint claimed harassment as a result of the "constant changes and limitations in the rights of [Griffith's] live-in care giver."  [Doc. 23 at 14].  Griffith further

asserted that she believed that without her daughter, she "would not be able to enjoy and benefit from [her] dwelling."  [Doc. 23 at 14].

In January 2014, after Griffith and Lowe met with Bonita Henderson from the City of Dallas Fair Housing Office, they claimed their apartment was again searched and papers were taken.  [Doc. 11 at 3].  In addition, from December 2013 through March 2014, Plaintiffs assert that Rainey's relatives, who lived above them, began banging on the floor every night; a man jumped over onto their patio and then left; and Plaintiffs were followed by various individuals in cars who "started using paper plates once they realized that Plaintiff Lowe was writing down their license plates."  [Doc. 18 at 4].  Plaintiffs assert that when Lowe called the police and filed a complaint with Rainey about the banging from the apartment above, the police informed Lowe "that if she call[ed] again she would be 'dinged,'" and Rainey laughed in response.  [Doc. 18 at 4].

Then in February 2014, during a follow-up meeting with the Fair Housing Office, Plaintiffs contend Henderson advised Lowe that if she "did not sign the revised Live-in Aide Addendum that [the Fair Housing Office] would have a problem representing her."  [Doc. 11 at 3].  Lowe allegedly informed Henderson that she was not going to sign the revised Addendum and requested another investigator for the case.  [Doc. 11 at 3].  The HUD case was eventually closed, however, Plaintiffs aver they do not have a copy of the decision.  [Doc. 23 at 8, no. 27]. Plaintiffs' allege that in May 2014, Rainey filed an eviction petition, citing "disturbance, excessive traffic, and trash bags," and Plaintiffs ultimately moved out.  [Doc. 23 at 3, 6, 61, nos. 9 and 25].

In the amended complaint, Plaintiffs maintain:

[their] claims. . . arise pursuant to 42 USCS §1982; 42 USCS §1983; 42 USCS §§3604, 3605, 3606; 42 USCS §3602; 42 USCS §3601 et seq. (Civil Rights Act

of 1968, §801 et seq.); 42 USCS §§3616, 3617; 42 USCS §1437; 4th and 13th Amendments of the United States Constitution; Sections 804b and Section 804f(3)(B) of title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

[Doc. 11 at 3].  They assert "actionable harassment occurred when defendants refused [to] reasonably accommodate plaintiffs and for permeating discriminatory intimidation, ridicule, and insult." [Doc. 11 at 4].  Plaintiffs also contend Defendants "created a hostile environment that was so pervaded by harassment as to alter the terms and conditions of Plaintiffs [sic] lease agreement and take away their enjoyment [of] the lease property." [Doc. 11 at 4].  They complain of racial and disability discrimination and claim violations of their constitutional rights, privacy rights, the American with Disabilities Act, and the Rehabilitation Act.  [Doc. 11 at 4; Doc. 18 at 4].  Plaintiffs seek monetary, equitable, and injunctive relief.  [Doc. 11 at 6].

> In response to questions about the "hostile environment claim," Plaintiffs aver that they were the object of discrimination based on disability and race. Defendants jointly and severally violated the Rehabilitation Act and the Fair Housing Amendments Act by being deprived use of common areas- complete denial access, discrimination against Plaintiffs in terms of privileges of tenancy, reasonable accommodation for parking needs, accommodate live-in help, disparate impact on disabled person in terms of defendants' inconsistent rental policies, violating right of privacy, and property rights.

[Doc. 18 at 2].  When asked to identify all facts in support of each type of discrimination, Plaintiffs reiterated the lengthy course of events [Doc. 18 at 3-4] and asserted:

> Accommodate live-in help: The Fair Housing Act Amendments, declare that it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of-(A) that person; ... Or (B) a person residing in ... that dwelling." 42 U.S.C. §3602(h)(l); 24 CFR §966.4(d).
>
> . . .
>
> Reasonable Accommodation: 42 USCS §3604 Defendants violated the Fair Housing Amendments Act when it refused to give parking permit and parking space denying them accessibility after Plaintiffs provided note from physician supporting their claim. Lloyd v Housing Auth. (1995, CA8 Mo) 58 F3d 398.

Denial of access to amenities on property supported by (use of common areas) 42 USCS §§ 1982 and 1983, 42 USCS §§3604, 3617, and 3613. Where deprivation causes complete denial. 42 USCS §3601 et seq; Title VIII, 42 USCS §§ 1981 and 1982(Civil Rights Act of 1968); 42 USCS §2000a et seq.; Jones v Mayer Co., 392 U.S. 409; Sullivan, 396 U.S. 229(1969).

Racial Discrimination: "Because of race" language in 42 USCS §3604 does not require proof of intent; proof of discriminatory effect will establish prima facie Title VIII case.  Resident Advisory Bd. V Rizzo (1977, CA3 Pa) 564 F2d 126. Plaintiffs may prevail by proving only that given policy had discriminatory impact on them as individuals. Betsy v Turtle Creek Associates (1984, CA4 Md) 736 F2d 983.

* * *

American with Disabilities Act claim supported by: 42 USCS §3601 et seq.; Americans with Disabilities Act, 42 USCS § 12131; Civil Rights Act of 1968, §804 as amended, 42 USCS § 3604; Rehabilitation Act of 1973, §§2-803 as amended, 29 U.S.C.(1994) §§ 701-797b.

Defendants policy deprived Plaintiff Griffith and Plaintiff Lowe live-in aide use of common areas violated stated purpose of 42 USCS § 12101(b)(l) and § 12131, where defendants policy was adopted for disabled tenants only, which brought about discrimination against individuals with disabilities. Coleman v Zatechka (1993, DC Neb) 824 F.Supp. 1360, 2 ADD 1280, 2 AD Cas 1374. Defendants failed to give reasonable accommodations for parking permit and parking space causing undue hardship.

[Doc. 18 at 4-6].  In answer to the supplemental questionnaire, Plaintiffs re-urge the same factual

allegations and arguments. [2]  [Doc. 23 at 4-6, 8-9].

## II. ANALYSIS

Because Plaintiffs are proceeding *in forma pauperis*, the complaint is subject to screening

under 28 U.S.C. § 1915(e)(2)(B).  That statute provides for *sua sponte* dismissal of a complaint if

---

[2] Plaintiffs object to the Court's questionnaires and the screening of their complaint because it has "placed unwarranted burden on [them] and undue delay in the process of legal proceedings." [Doc. 23 at 1-2].  They also request "review of orders and actions of the Magistrate Judge." [Doc. 23 at 1].  However, because questionnaires have been recognized as a useful and proper means for courts to develop the factual basis of a *pro se* plaintiff's complaint, *see Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999)*, the undersigned recommends, as it did previously, that Petitioner's objection and request for review be rejected.  [Doc. 19 at 1-2].

the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief

may be granted, or (3) seeks monetary relief against a defendant who is immune from such

relief. A complaint fails to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

The Court liberally construes Plaintiffs' filings with all possible deference due a *pro se*

litigant. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* pleadings are

held to less stringent standards than formal pleadings drafted by lawyers). Even under this most

liberal construction, however, Plaintiffs fails to state a claim on which relief can be granted.

## A. Fair Housing Act

Plaintiffs sue under the Fair Housing Act ("FHA"), citing generally to 42 U.S.C. §§

3601-3606, and 3616-17. [Doc. 11 at 3]. The FHA prohibits discrimination in housing against

any person based on race, color, religion, sex, handicap, familial status, or national origin. The

only provisions arguably applicable to Plaintiffs' suit are Sections 3604(b) and (f)(2) (making it

unlawful to discriminate because of race or a handicap in the provision of services or facilities in

connection with the rental of a dwelling) and Section 3617 (making it unlawful to intimidate,

threaten, or interfere with a person based on the exercise of their fair housing rights).[3]

---

[3] Sections 3601-3603 and Sections 3605-3606 are inapplicable. Section 3601 sets out the
United States' policy "to provide, within constitutional limitations, for fair housing throughout
the United States." Section 3602 contains definition for terms used in the subchapter, while
Section 3603 defines certain terms, sets forth exemptions to Section 3604, and provides effective
dates for the prohibitions in the statute. Section 3605 involves discrimination in real estate-
related transactions, such as financing of housing, and Section 3606 covers brokerage services.

In addition to pleading the elements of each statutory provision, a plaintiff must assert discrimination. *AHF Cmty. Dev. LLC v. City of Dallas*, 633 F. Supp. 2d 287, 297 (N.D. Tex. 2009) (Fitzwater, C.J.). Violation of the FHA can be shown either by proof of intentional discrimination that the defendant acted with discriminatory intent or by proof of disparate impact that the defendant's policies or practices resulted in a significant discriminatory effect. *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 280 (5th Cir. 2014).

<u>Section 3604(b)</u>

Section 3604(b) prohibits discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color . . . ." 42 U.S.C. § 3604(b). To prevail under this section, Plaintiffs must prove that: (1) they are members of a protected class; (2) they rented an apartment from Defendants; (3) Defendants imposed a condition upon their lease; and (4) their protected class was a significant factor in the decision. In *Cox v. City of Dallas*, the United States Court of Appeals for the Fifth Circuit held that the phrase "in connection therewith" refers to the sale or rental of a dwelling rather than to the simple enjoyment of the dwelling itself. 430 F.3d 734, 745 (5th Cir. 2005); *accord AHF*, 633 F. Supp. 2d at 301–302. The Court of Appeals noted, however, that Section 3604(b) may encompass the claim of a renter for discrimination resulting in actual or constructive eviction. *Cox*, 430 F.3d at 746-747 (citing *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) ("[W]hen a landlord imposes on white tenants the condition that they may lease his apartment only if they agree not to receive blacks as guests, the landlord has discriminated against the tenants in the 'terms, conditions and privileges of rental' on the grounds of 'race.'")). Thus, the imposition of discriminatory conditions upon a tenant's lease violates Section 3604(b). *Lundy*, 667 F.2d at 1201.

Here, Plaintiffs do not complain that the Complex placed discriminatory conditions upon their lease because of their race.  Their complaint is silent about any stipulation or clause in the lease agreement or any addenda thereto that was allegedly imposed on the ground of race. Plaintiffs identify only one condition that was imposed upon the lease -- that the Complex required Plaintiffs to sign a revised Live-in Aide Addendum indicating that "Lowe had no rights as an occupant."  [Doc. 11 at 2].  Plaintiffs fail, however, to offer any factual basis from which it can be concluded that the addendum requirement was as a result of race, *e.g.*, that similarly-situated non-African Americans were not required to execute such an addendum.  Outside of the addendum requirement, all of Plaintiffs' assertions relate to events that occurred *after* Griffith signed the lease and moved into the apartment and, thus, do not relate to the initial rental of a dwelling as contemplated under section 3604(b).  Thus, they are only actionable under Section 3604(b) to the extent that they resulted in actual or constructive eviction.

Plaintiffs do not contend that discriminatory conditions resulted in actual or constructive eviction from their apartment.  The May 2014 petition for eviction (filed about one year after Plaintiffs moved to the Complex) mentions only "disturbance, excessive traffic, and trash bags," and Plaintiffs do not suggest that the true motivation was their race.  Similarly, even assuming constructive eviction is a viable claim, Plaintiffs do not maintain constructive eviction from their apartment because of the Complex's refusal to provide a parking permit, a handicapped parking space, a remote-access key for Lowe, and access to all walk-in gates.  *See AHF*, 633 F. Supp. 2d at 300 (finding "questionable whether a constructive eviction-type claim is even cognizable under [Section] 3604(a)," and noting that *Cox* rejected "only those habitability claims that fall short of constructive eviction, leaving the question of constructive eviction for another day") (quoting *Cox*, 430 F.3d at 742 n.21)).

While these denials may well have impacted Plaintiffs' enjoyment of the leased property, none rises above mere complaints about habitability.  *See* AHF, 633 F. Supp. 2d at 300 (only the "denial of certain essential services relating to a dwelling, such as mortgage financing, sewer hookups, zoning approval, or basic utilities" would rise to the level of rendering continued residence objectively unreasonable).  Neither a parking permit nor a handicapped parking space for Lowe's truck was an essential service that the Complex was obligated to offer, and the lack thereof not sever enough in light of the availability of visitor parking spaces.  The same applies to the denial of a remote-access key for Lowe and access to all walk-in gates, not just one.  Griffith concedes that she had a remote-access key, and Griffith and Lowe both had access to one walk-in gate, although it was not the one closest to their apartment.  Likewise, adding Lowe as an occupant or tenant to the lease agreement simply to accommodate her needs as a live-in aid was not an essential service, since she had access to all amenities when accompanied by Griffith.

Additionally, Plaintiffs have alleged no facts showing that race was a significant factor in the Complex's actions.  They do not maintain that the denial of a parking permit, handicapped parking space, remote-access key for Lowe, and access to all walk-in gates implicated their race.  Nor do they contend racial discrimination with respect to the Complex's refusal to add Lowe as an occupant or tenant to the lease agreement or in the later requirement that the Plaintiffs sign the revised Live-in Aide Addendum.  Only in connection with Lowe's denial of access to the clubhouse and other amenities do Plaintiffs plead discrimination based on race.  [Doc. 11 at 4; Doc. 18 at 3].  Plaintiffs have failed to "assert the requisite connection between the alleged discrimination and the . . . rental of a dwelling." *Cox*, 430 F.3d at 746.  Indeed the complaint and answers to the questionnaires are devoid of any factual enhancement reasonably suggesting any possible discriminatory condition/term in the lease or in the provision of services or facilities

because of Plaintiffs' race.  Accordingly, Plaintiffs' Section 3604(b) claim fails to state a claim to relief that is plausible on its face.  *See* *Twombly*, 550 U.S. at 570.

Section 3604(f)(2)

Section 3604(f)(2) makes it unlawful to "discriminate against any person in terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person."  42 U.S.C. § 3604(f)(2)(A).  Discrimination on the basis of a handicap includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

Plaintiffs premise their claim on the refusal to accommodate Lowe's needs as a live-in aide.  They maintain Lowe was denied a parking permit and a handicap parking space, was provided limited access to property gates, and refused entry to the clubhouse and other amenities.[4]  These actions, however, are only actionable under Section 3604(f) as to Griffith, who has a disability.  *See* 42 U.S.C. § 3604(f)(2) (requiring that the discrimination against a person occur "because of" a handicap of "that person").  Lowe does not fall within Section 3604(f)(2) because all three subsections contemplate discrimination against people who themselves have disabilities.  *See* 42 U.S.C. § 3604(f)(2)(A)–(C).  Thus, Lowe is protected under Section 3604(f) only to the extent that she *is* the reasonable accommodation the Complex may have been required to afford Griffith.

---

[4] The HUD complaint, which is attached to the answers to the supplemental questionnaire, confirms that the crux of Plaintiffs' complaint is Defendants' refusal to accommodate Lowe's needs as a live-in aide and add her to the lease agreement so that she could park in the apartment complex and use the exercise equipment, common areas, and other amenities.  [Doc. 23 at 13].

Even assuming that the Complex's alleged actions against Lowe constituted a denial of a reasonable accommodation to Griffith, and that such denial altered the terms and conditions of Griffith's rental, Plaintiffs have failed to offer any factual enhancement describing how such actions were taken on account of Griffith's handicap. *See* Section 3604(f)(2) (making it unlawful "to discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of a handicap of that person.*") (emphasis added). The amended complaint and answers to the first questionnaire are silent about the Complex failing to reasonably accommodate Griffith's needs as a disabled individual in connection with parking and entry to the Complex. Only in answer to the supplemental questionnaire do Plaintiffs maintain that the "refusal to give parking permit, handicap parking, and gate access key [was] related to Mrs. Griffith because she is completely relying on Ms. Lowe." [Doc. 23 at 3, no. 10]. However, they fail to explain how the accommodation was because of Griffith's handicap and necessary to afford her an equal opportunity to use and enjoy the apartment, *see* Section 3604(f)(3)(B), and merely claim they were "excluded from the participation in," and were "denied the benefits of the accommodation." [Doc. 23 at 3, no. 10(d)]. Moreover, it is only in the HUD complaint that Griffith asserts she had access to only one walk-in gate, which was not the closest to her unit. [Doc. 23 at 13-14].

Thus, absent allegations reasonably suggesting that a parking permit and access to the gate closest to their unit were essential for Griffith's use and enjoyment of the apartment, Plaintiffs have failed to plead enough facts to state a claim to relief that is plausible on its face under Section 3604(f)(2). [5]

---

[5] Plaintiffs' allegations are replete with inconsistencies. Although they affirm that Lowe and Griffith did not have a remote access key and that Lowe used a "gate code," Plaintiffs concede that Supervisor Hedrick gave Griffith a "gate key" on June 21, 2013. [Doc. 23 at 3-4, compare

Section 3617

Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section [3604] of this title." 42 U.S.C. § 3617.  To assert a prima facie case of retaliation, a plaintiff must show (1) she engaged in the exercise or enjoyment of her rights protected by the FHA; (2) the defendant subjected her to an adverse action (coercion, threats, or interference); and (3) a causal connection exists between the protected activity and the adverse action.  *See Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 11-CV-1239, 2011 WL 4359940 at *9 (N.D. Tex. 2011) (Fitzwater, C.J.) (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)).

Plaintiffs contend they filed a housing discrimination complaint with HUD on December 23, 2013, and that after Lowe met with Ms. Henderson on January 29, 2014, at the Fair Housing Office, "their apartment was searched and papers were taken again."[6] [Doc. 11 at 3].  According to Plaintiffs, the HUD case is now "closed" and they do not have a copy of the decision.  [Doc. 23 at 8, no. 27].  They also aver that in May 2014 the Complex filed a petition for eviction. [Doc. 18 at 6; Doc. 23 at 6, 61, no. 25 and eviction petition].

Regarding the latter, Plaintiffs claim "constructive eviction," namely deprivation "of the beneficial use of the premises . . . done in malice and bad faith, and so severe as to interfere with the Plaintiffs' peaceful enjoyment of the premises."  [Doc. 23 at 6, 8, nos. 25-26].  Yet, Plaintiffs have alleged no factual enhancement to show any possible connection between the HUD complaint and their ultimate eviction.  Moreover, the basis for the eviction petition was limited to "disturbance, excessive noise, and trash bags."  [Doc. 23 at 61].

---

answers nos. 11-13 with no. 25].  In the HUD complaint, Plaintiffs affirm they had access to the Complex through "one entry gate with use of the remote."  [Doc. 23 at 13].

[6] The Answer to the supplemental questionnaire includes a copy of the HUD complaint.  [Doc. 23 at 12-14].

Additionally, Plaintiffs have presented no facts to show even a minimal causal link between the HUD complaint and the Complex's other adverse actions.  In response to the supplemental questionnaire, Plaintiffs identify (for the first time) two adverse actions -- denial of copy of lease agreement after signing it on April 20, 2013, and refusal of access to the apartment until April 30, 2013.  [Doc. 23 at 4, no. 25].   However, both of these incidents occurred long before the filing of the HUD complaint.  Furthermore, while Plaintiffs claim that after moving into the apartment they experienced harassment, they provide the same general litany of events repeated throughout the amended complaint and answer to the first questionnaire.  [Doc. 23 at 4-8, nos. 25-26].  Thus, apart from the conclusory assertion that their apartment was "searched" on unspecified dates and times by unidentified individuals, that Rainey's relatives banged on the floor in the unit above them, and that Plaintiffs were followed by unidentified individuals when leaving the apartment complex (events that apparently also happened before the filing of the HUD complaint), Plaintiffs do not state when or where any intimidation or interference occurred, or what statements and actions were made by Defendants that would allegedly manifest intimidation or wrongful interference with a right protected under the FHA.

In addition, to be actionable under Section 3617, the defendant's conduct must make housing unavailable, not merely less habitable.  *See Reule v. Sherwood Valley I Council of Co-Owners, Inc.*, 235 F. App'x 227, 227–28 (5th Cir. 2007) (unpublished per curiam) (holding that the plaintiff's claims under Sections 3604 and 3617 fail because they go to the habitability of her condo and not the availability of housing); *AHF Cmty. Dev., LLC v. City of Dallas*, 633 F. Supp. 2d 287, 302-03 (N.D. Tex. 2009) (same).  Here, the bulk of Plaintiffs' allegations, as previously discussed, are habitability claims that do not implicate the availability of the dwelling.

Based on the above, Plaintiffs' pleadings, even when liberally construed, present no factual enhancement to establish that Defendants' actions and eviction petition are causally linked to the HUD complaint.  Accordingly, Plaintiffs have failed to state a claim under Section 3617 that is plausible on its face.

### B. Federal Civil Rights Statutes

Plaintiffs also allege federal civil rights violations.  42 U.S.C. § 1981 prohibits race discrimination in the making and enforcement of contracts, and 42 U.S.C. § 1982 forbids race discrimination *inter alia* in the lease of real property.[7]  To state a claim for a violation of Section 1981, a plaintiff must allege facts showing that (1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination related to one or more activities enumerated in the statute, including the right to make or enforce contracts.  *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002), abrogated on other grounds by *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006).  In the same vein, to state a claim under Section 1982, a plaintiff must be a racial minority and allege facts tending to show that the defendant intentionally discriminated against her on that basis with respect to property rights.  *Chapman v. Arlington Hous. Auth.*, 145 F. App'x 496, 497 (5th Cir. 2005).

As with their FHA claims, Plaintiffs only complain of Lowe's "[d]enial of access to amenties [sic] on property . . . (use of common areas)" [Doc. 18 at 5], and make no connection between such actions and either of Plaintiffs' race.  Thus, the pleadings, even when liberally construed, fail to state a claim to relief that is plausible on its face under Sections 1981 and 1982.

---

[7] Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...."  Section 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Plaintiffs' reliance on 42 U.S.C. § 1983 fares no better.  To pursue a claim under Section 1983, a plaintiff must allege (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by one acting under color of state or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  When asked to state all facts in support of their claim that the Defendants acted "under color of state law," Plaintiffs merely asserted that they were "deprived of property under color of state law."  [Doc. 18 at 32].  They urge that "Defendants established a policy that violated Plaintiffs rights," and that Defendants were "given the authority by PHA [Public Housing Authority] to develop policies that infringed upon Plaintiffs rights which lack sufficient definiteness or specificity [and] are commonly held 'void for vagueness.'"  [Doc. 18 at 32].

Plaintiffs, however, have alleged no facts that would support a finding that any of the Defendants — a private individual and two private entities — are state actors for purposes of section 1983.  *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (Section 1983 does not reach "private conduct, no matter how discriminatory or wrongful").  While they reference generally "federal financial assistance" and the Public Housing Authority [Doc. 18 at 3, 32; Doc. 23 at 3, answer no. 7], there is nothing to suggest the Complex is not privately run and owned.  Nevertheless, even assuming Defendants were state actors, Plaintiffs' bare allegations that Lowe was denied a parking permit, a handicap parking space, and access to property gates, and refused entry to the club house and other amenities, do not rise to the level of a constitutional violation.  Likewise, the fact that management entered Plaintiffs' apartment [Doc. 18 at 30-31, 41] violates neither the Fourth Amendment nor Plaintiffs' right to privacy. *See Burdeau v. McDowell*, 256 U.S. 465, 475 (1921) (recounting the legal maxim that Fourth Amendment protection applies only to governmental action).  In addition, Plaintiffs' purported

reliance on the Thirteenth Amendment [Doc. 18 at 31] lacks any legal support.  *See* U.S. CONST. amend. XIII (abolishing slavery).  Accordingly, Plaintiffs have failed to allege sufficient facts to state a claim under Section 1983 that is plausible on its face.

## C. <u>Americans with Disabilities Act</u>

Next, Plaintiffs assert Defendants violated the Americans with Disabilities Act ("ADA") by confining them "to unnecessary restrictive settings such as facilities."  [Doc. 11 at 5].  They claim Defendants "placed restriction[s] on Plaintiff Lowe as if she was a pet . . . adopted unreasonable policies concerning residence," and "Rainey colluded with other tenants in engaging in depriving Plaintiffs use of common areas by threatening, intimidating, or interfering with a person in the enjoyment of their dwelling."  [Doc. 11 at 5].  Although Plaintiffs did not answer Question 14 of the first questionnaire, which specifically inquired about the ADA claim, they generally assert in answer to other questions:

> American with Disabilities Act claim supported by: 42 USCS §3601 et seq.; Americans with Disabilities Act, 42USCS §12131; Civil Rights Act of 1968, §804 as amended, 42 USCS §3604; Rehabilitation Act of 1973, §§2-803 as amended, 29 U.S.C.(1994) §§701-797b.
>
> Defendants policy deprived Plaintiff Griffith and Plaintiff Lowe live-in aide use of common areas violated stated purpose of 42 USCS §12101(b)(l) and §12131, where defendants policy was adopted for disabled tenants only, which brought about discrimination against individuals with disabilities.  Coleman v Zatechka (1993, DC Neb) 824 F.Supp. 1360, 2 ADD 1280, 2 AD Cas 1374.  Defendants failed to give reasonable accommodations for parking permit and parking space causing undue hardship.

[Doc. 18 at 5].

Plaintiffs have failed to allege sufficient facts to state a claim under the ADA that is plausible on its face.  Title I of the ADA is inapplicable because they were not employed by the Complex.  *See* 42 U.S.C. § 12112(a) (prohibiting discrimination in employment-related decisions based on the disability of an otherwise qualified individual).  Likewise, Plaintiffs do not claim

that the Complex was a public entity under Title II of the ADA or that any Defendant owned or operated a place of public accommodation as defined under Title III of the ADA.  *See* 42 U.S.C. § 12132 (providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"); 42 U.S.C. § 12182(a) (stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation."); 42 U.S.C. § 12181(7) (listing private entities considered public accommodations).

### D. Rehabilitation Act

In response to the Court's first questionnaire, Plaintiffs assert for the first time a violation of the Rehabilitation Act.  The Rehabilitation Act provides that "[n]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a). However, Plaintiffs allege no facts showing that they were discriminated under a federally funded program because of Griffith's handicap.  Again, Plaintiffs maintain only that Defendants failed to accommodate Lowe's needs as a live-in aide.

> Defendants jointly and serverally [sic] violated the Rehabilitation Act and the Fair Housing Amendments Act by being deprived use of common areas- complete denial access, discrimination against Plaintiffs in terms of privileges of tenancy, reasonable accommodation for parking needs, accommodate live-in help, disparate impact on disabled person in terms of defendants' inconsistent rental policies, violating right of privacy, and property rights.

[Doc. 18 at 2].  In answer to the supplemental questionnaire, Plaintiffs reiterate the litany of alleged failure to "accommodate live-in help."  [Doc. 23 at 8, no. 29).  Accordingly, their Rehabilitation Act claim fails to allege sufficient facts to state a claim that is plausible on its face.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend the complaint prior to dismissal.  *See* Brewster v. Dretke, 587 F.3d 764, 767–68 (5th Cir. 2009).  Here, even taking Plaintiffs' factual assertions as true, the claims are fatally infirm for all the reasons discussed. **Nevertheless, Plaintiff is granted 14 days from the date of this Recommendation to amend the complaint to state a viable claim under 42 U.S.C. §§ 3604(f)(2) and 3617 against one or more Defendants.**  If Plaintiff fails to do so, the Court should dismiss this case with prejudice as frivolous.  *See* Brown v. Texas A&M Univ., 804 F.2d 327, 334 (5th Cir. 1986) ("Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,'" he must be permitted to amend his claim if he can do so.).

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiffs' amended complaint be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted,  *see* 28 U.S.C. § 1915(e)(2)(B), unless Plaintiffs amend their complaint, **within 14 days of the date of this recommendation**, to allege a viable claim against one or more Defendants under 42 U.S.C. § 3604(f)(2) and 3617.

SIGNED April 21, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See* *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE